IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VIMALA LLC, d/b/a ALECIA, et al., | ) |
| Plaintiffs, | ) NO. 3:19-cv-00513 |
| v. | ) JUDGE RICHARDSON |
| WELLS FARGO BANK, N.A., et al., | ) |
| Defendants. | ) |

# ORDER

Pending before the Court is Defendants' Motion for Sanctions (Doc. No. 125, "Motion"), supported by a memorandum of law with numerous exhibits (Doc. Nos. 126 and 126-1 through 126-13, "Brief in Support"). Plaintiffs have filed a response in opposition to the Motion with numerous exhibits (Doc. No. 144 and 144-1 through 144-24, "Response"), and Defendants have filed a reply in further support of the Motion with numerous exhibits (Doc. Nos. 163 and 163-1 through 163-6, "Reply").

The Motion is grounded on the proposition that Plaintiffs' claims are based largely on falsified[1] emails.[2] That is, Defendants claim that Plaintiffs rely largely on particular ostensible

---

[1] By "falsified email," the Court means an ostensible email made to appear (via any of a number of possible techniques) that it was sent when in fact it was never sent, that it was sent either to or from an account on Defendants' email domain when in fact it was not sent to or from an account on Defendants' email domain, and/or that it was sent to or by an actual employee of Defendants having the name reflected in the email (and email account name) when in fact it was not sent to or by an actual employee of Defendants having the name reflected in the email.

[2] Defendants claim that of a total of 69 emails produced to them by Plaintiffs (listed at Doc. No. 126-10, Appendix C), at least 56 (listed at Doc. No. 126-10 at Appendix E-1) "possess features indicative of having been falsified." (Doc. No. 126-10 at 7). The Court assumes, unless and until it hears otherwise, that Defendants are actually going further and asserting that each of these emails *actually was* falsified. While asserting the inauthenticity of all of these emails, Defendants focus

emails that purportedly were sent to or from Defendants' email domain and to or by employees of Defendants but which (according to Defendants) were not sent to or from Defendants' email domain and were not sent to or by actual employees of Defendants. Defendants request that Plaintiffs be sanctioned (specifically by dismissal with prejudice) for their reliance upon emails that (at least by now if not originally) Plaintiffs must know to be bogus. (Doc. No. 125 at 1). Alternatively, Defendants request a show cause order requiring Plaintiffs and their counsel to show cause why sanctions should not be imposed. (*Id.*).

The Motion raises very serious allegations of impropriety on the part of Plaintiffs and their counsel. From its review of the Motion, the Brief in Support, the Response, and the Reply, the Court understands that there are numerous factual and legal issues involved in the proper resolution of the Motion. But the Court wants to focus initially on issues concerning whether the documents are authentic and, to the extent that they are not, who is responsible for their fabrication and what Plaintiffs knew or did not know about any such fabrication. In particular, the Court wishes to clarify what is in dispute and, more specifically, whether any matters in dispute on these limited topics could be illuminated via an in-person hearing.

Plaintiffs' Response (in conjunction with various other filings) appears to make clear that Plaintiffs continue to stand by the authenticity of the emails,[3] contend that the conclusions of their

---

more on some of them than others. Generally, when the Court refers below to "emails," it is referring to some, though not necessarily all, of the emails in this group of 56 emails.
  It appears that Defendants also challenge the authenticity of certain purported merchant service account statements on which Plaintiffs rely, but the Motion concentrates on the alleged inauthenticity of the pertinent emails.

[3] In this context, there are multiple ways in which an email may not be "authentic," *i.e.*, not be what it purports to be. By authentic, the Court here generally means actually sent to or from an account on Defendants' email domain and sent to or by an actual employee of Defendants having the name reflected in the email (and email account name). Conversely, by inauthentic, the Court means either not actually sent at all, not actually sent to or from an account on Defendants' email

expert (Mr. Lanterman) support the authenticity of the emails, contend that Defendants lack certain information necessary to refute the authenticity of the emails (or at least to establish the inauthenticity of the emails),[4] deny that Plaintiffs ever have been (or necessarily must have been) aware of the inauthenticity of any emails that (contrary to Plaintiffs' continuing position) are not authentic, and deny having any knowledge of who was (or might have been) responsible for fabricating any inauthentic emails. However, the Court wishes to confirm that it accurately understands Plaintiffs' position on these points.

The Court has a few additional questions to help it decide whether it needs to hold an in-person evidentiary hearing. The Court wishes to discuss with Plaintiffs' counsel:

(1) Whether, and if so to what extent, Plaintiffs dispute the conclusions of Defendants' expert (Mr. Hammerquist) summarized at paragraph 11(a) of his expert report (Doc. No. 126-10 at 7-8);[5]

(2) To the extent that Plaintiffs do dispute such conclusions, whether Plaintiffs have any basis for such dispute beyond whatever basis is indicated in the Response and whether Plaintiffs would offer at an evidentiary hearing evidence in support of such dispute;

---

domain, and/or not sent by an actual employee of Defendants having the name reflected in the email (and email account name). The Court notes that if an email was not sent to or by an actual employee of Defendants having the name reflected in the email (and email account name), that could be either because (i) there was no such employee or (ii) there was such an employee (as in the case, apparently, of Anjali Tiwari) but the email was not sent to or by such employee.

[4] The Court refers here to, among other things, a "log" of email addresses that had once been on its email domain but thereafter were deleted.

[5] Mr. Hammerquist's overarching conclusion set forth at paragraph 10(a) of his report (Doc. No. 126-10) is that each of the above-referenced 56 emails "possess features indicative of having been falsified." (Doc. No. 126-10 at 7). The Court assumes, unless and until it is told otherwise, that Plaintiffs dispute this conclusion as well as the narrower proposition that each of these 56 emails *actually was* falsified. The Court wishes to get into the weeds regarding the extent to which, and why, Plaintiffs dispute that what Mr. Hammerquist identifies as the basis for his overarching conclusion actually supports the overarching conclusion.

(3) Whether, and if so to what extent, Plaintiffs dispute the significance (to the analysis of the emails' authenticity) of the conclusions of Defendants' expert (Mr. Hammerquist) summarized at paragraph 11(a) of his expert report (Doc. No. 126-10 at 7-8);

(4) To the extent that Plaintiffs do dispute such the significance of such conclusions, whether Plaintiffs have any basis for such dispute beyond whatever basis is indicated in the Response and whether Plaintiffs would offer at an evidentiary hearing evidence in support of such dispute;

(5) Whether Plaintiffs have a basis, beyond whatever basis is set forth in their Response, for disputing that they had knowledge (beyond whatever knowledge they have gleaned from Defendants during the course of this litigation) of the falsification of any emails that were in fact falsified—and, if so, whether Plaintiffs would offer at an evidentiary hearing evidence in support of the notion that they had no such knowledge; and

(6) Whether Plaintiffs, who apparently agree with Defendants that there was no employee of Defendants named "Mike Telathourp," likewise agree that there was no employee of Defendants named "Liz Harrington," "Elizabeth M. Harrington," or Reynolds Watkins"—and, if not, whether Plaintiffs would offer at an evidentiary hearing evidence in support of the notion that one or more person(s) with such names were employees of Defendant.

(7) Whether Plaintiffs would offer at an evidentiary hearing evidence as to who was (or might have been) responsible for the falsification of any emails that were falsified.

The Court has drawn no conclusions yet about the merits of the Motion and believes that a discussion of these and related topics will assist it in resolving the Motion (including by determining whether to hold an evidentiary hearing on the Motion). Thus, a teleconference is

scheduled for **November 1, 2021 at 9:00 a.m.** Counsel may access the conference call by dialing 877-402-9757. When prompted, enter the access code of 3785916 followed by the pound (#) sign. If you have any issues connecting, please call Chambers at (615) 736-5291. As these are public proceedings, other persons may access the conference call in the same manner. Obviously, counsel for Plaintiffs should be prepared to discuss the above issues, and counsel for Defendants should be prepared to discuss their reaction to Plaintiffs' position on the above issues. Each side may, but is not required to, file a notice in advance of the teleconference saying whatever they may wish to say regarding the topics and issues raised herein.

As noted, the Motion presents very serious issues (and literally a stack of paper three inches high). The pending motion for summary judgment is to like effect. Thus, the current trial date and pretrial conference are hereby canceled, to be rescheduled if appropriate upon the Court's resolution of these two motions, as will be further discussed at the teleconference.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE