IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VIMALA LLC, d/b/a Alecia, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:19-cv-00513 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| WELLS FARGO BANK, N.A., et al., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Pending before the Court is, *inter alia*, "Defendants' Motion for Sanctions" (Doc. No. 125), "Motion for Sanctions"). In its memorandum of law in support of the Motion (Doc. No. 126), Defendants describes the basis for the Motion for Sanctions as follows:

> Wells Fargo moves for sanctions against Plaintiffs and their Counsel under Rules 11 and 37 and the Court's inherent powers due to the fraud Plaintiffs have committed and are continuing to commit upon this Court, and their Counsel's decision to continue prosecuting Plaintiffs' claims despite knowing of the fraud. Plaintiffs filed a salacious 15-count Complaint seeking over $250 million in damages alleging that Wells Fargo stole millions of dollars processed through merchant accounts belonging to Vimala LLC. *But Plaintiffs' allegations regarding Wells Fargo are fiction and have been so from the outset of the case because the evidence submitted and relied upon by Plaintiffs is falsified, as expert analysis and the record evidence has now confirmed.*
>
> In support of their allegations, Plaintiffs primarily rely upon purported email communications between Venkataraman and former Wells Fargo employee Anjali Tiwari and alleged Wells Fargo employee "Liz Harrington" regarding merchant accounts, which they have attached to the Complaint and Plaintiffs' Initial Disclosures. Plaintiffs have also produced and relied on purported emails from "Mike Telathourp" as well as another supposed Wells Fargo employee named "Reynold Watkins" regarding merchant accounts. No evidence—other than Venkataraman's self-serving testimony—supports the emails' legitimacy.
>
> Since filing the Complaint, the parties have conducted extensive discovery, which has conclusively shown that Plaintiffs' allegations are false. As a starting point, Plaintiffs do not have, and never have had, WFMS merchant accounts. Even

more egregiously, though, discovery has shown that Plaintiffs' principal evidence—the purported email communications between Venkataraman and Wells Fargo regarding merchant accounts and withheld funds—**_has been fabricated by Venkataraman herself._** From the beginning of this case, Wells Fargo informed Plaintiffs and their Counsel that the emails relied upon by Plaintiffs appeared illegitimate because there have never been Wells Fargo employees named Telathourp, Harrington, or Watkins, and Tiwari, a former bank branch employee, testified that she did not send any emails to Plaintiffs regarding merchant accounts. Wells Fargo also informed Plaintiffs and their Counsel in written discovery of anomalies in the emails' metadata, which demonstrates that they were not sent through Wells Fargo servers operational as of their send date. Most recently, Wells Fargo retained a computer forensic expert to examine the emails purportedly exchanged between Venkataraman and Wells Fargo regarding merchant accounts. The expert confirmed that every one of them was faked. Even worse, the manner in which the emails were faked shows that Venkataraman manually created them using prior authentic emails she received from Wells Fargo Bank in connection with her (real) business banking accounts.

Wells Fargo has repeatedly apprised Plaintiffs and their Counsel of the evidence's falsity, but neither have offered to withdraw this lawsuit nor otherwise remedy the fraud being committed upon the Court. To the contrary, they have doubled down on their position that the emails, as well as the other evidence, are legitimate. Plaintiffs recently produced their expert reports and no less than three of Plaintiffs' experts rely on the fabricated emails in formulating their opinions. Further, since April 19, 2021, Plaintiffs and their Counsel have been in possession of the expert report of Wells Fargo's forensic computer expert whose analysis points to Venkataraman *herself* falsifying the emails, yet Plaintiffs' Counsel continue to press on.

Considerate of the gravity of the relief sought herein, Wells Fargo cautiously awaited expert forensic analysis confirming that the emails were fabricated prior to filing this Motion. However, Plaintiffs' and their Counsel's decision to continue multiplying these proceedings based upon falsified evidence must be sanctioned. Thus, Wells Fargo respectfully requests that the Court sanction Plaintiffs and their Counsel under Rules 11 and 37 and its inherent powers, dismiss the lawsuit with prejudice, and award Wells Fargo its attorney's fees and expenses incurred in this lawsuit.[1] Alternatively, Wells Fargo respectfully requests that the Court issue a show cause order requiring Plaintiffs and their Counsel to account for the apparent falsity of this evidence and show cause why the Court should not impose the requested sanctions.

(Doc. No. 126 at 1-3). In short, Defendants contend that certain purported emails[1] (collectively, the "allegedly fabricated emails")[2] supporting Plaintiffs' claims were fabricated by Plaintiff Venkataraman. Responding to the contention through various filings and in dialog with the Court, Plaintiffs do not necessarily concede that the allegedly fabricated emails were in fact fabricated and, alternatively, contend that Plaintiff Venkataraman was not responsible for any such fabrication that may have occurred.

The Court is aware that resolution of the Motion for Sanctions requires consideration of issues beyond merely whether, as Defendants claim, Plaintiff Venkataraman fabricated the allegedly fabricated emails. Even if she did, that would not necessarily mean that the Motion for Sanctions must be granted in full. Conversely, even if she did not, that would not necessarily mean that the Motion for Sanctions must be denied in full. But as is readily apparent, resolution of the Motion for Sanctions to a large extent will turn on (1) which (if any) of the allegedly fabricated emails were fabricated[3] and, if so, (2) which (if any) of such fabricated emails were fabricated by Plaintiff Venkataraman.[4]

---

[1] As used herein, a "purported email" refers to the substantive content of an electronic file (either in what the undersigned layperson understands to be MIME format or, in two cases, PDF format) that ostensibly reflects an email between Plaintiff Venkataraman and an employee of one of the Defendants.

[2] The allegedly fabricated emails, which total 56 in number (of which, as noted above, two are in PDF format and the remainder apparently are in MIME format), have been identified (under the moniker "apparent falsified emails") by Defendant at Doc. No. 126-10 at Appendix E-1.

[3] By "fabricated," the Court means something along the lines of "made to appear as if it was an email actually sent from the purported sender to the purported recipient, when in fact it was not an email sent from the purported sender to the purported recipient, if indeed it was something that ever existed at all in email form."

[4] The Court is aware that resolution of these issues is or at least may be (to put it mildly) material to resolution of matters beyond the Motions for Sanctions; it will (or at least may) impact the Court decision on "Defendants' Motion to Exclude Expert Opinions and Testimony of Mark Lanterman (Doc. No. 154) and Defendant's motion for summary judgment (Doc. No. 118). But the Court currently is contemplating the appointment of a special master for purposes of the Motion for Sanctions in particular, setting aside at least for the time being any consideration of the potential for the special master's work to impact these other two motions or any other aspect of the case.

The parties have submitted dueling expert reports related to these issues. (Doc. Nos. 126-10 and 136-19). Although these reports do not conflict with each other in all respects, and indeed in some respects perhaps can be reconciled, they certainly point to generally opposite conclusions regarding issues (1) and (2) above. Although the undersigned can say that he is far from new to the kinds of forensic concepts necessary to address these two issues and that he well understands the role of these concepts in resolving these two issues, he also can say that his consideration of these issues would be enhanced by the expertise a special master could provide. He likewise can say that he is not confident that he can devote adequate time—considering the time he needs to devote to other matters on his docket—to scrutinize these issues the way a special master could.

Accordingly, pursuant to Federal Rule of Civil Procedure 53, the Court hereby gives notice of, and an opportunity to be heard on, its intention to appoint a special master for purposes of addressing issues (1) and (2) delineated above. The Court finds, subject to consideration of the parties' views, that the appointment of a special master for this purpose likely is justified under Rule 53(a)(1)(B)(i) & (C), even accounting for the countervailing considerations of Rule 53(a)(3),[5] considering the complex forensic issues to be addressed, the volume of data (and metadata) which must be reviewed and the limited judicial resources available to conduct the extensive review required in this case.

The parties shall meet and confer in an effort to submit for the Court's consideration a notice (or proposed agreed order) which suggests a candidate for appointment as special master and suggests a specific scope of duties for the special master related to issues (1) and (2) above. By February 28, 2022, the parties shall either (i) submit such a notice (or proposed agreed order),

---

[5] These considerations are the fairness of imposing the likely expenses on the parties—which the Court intends to do, whether all on one side, equally between the sides, or unequally between the sides—and the need to protect against unreasonable expense or delay.

or, if they are unable to agree on a proposed order, (ii) submit separate notices (or proposed orders) with these suggestions.

     IT IS SO ORDERED.

                                                    _____
                                                    ELI RICHARDSON
                                                    UNITED STATES DISTRICT JUDGE