IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VIMALA, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:19-cv-00513 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| WELLS FARBO BANK, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER and MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' "Motion to Disqualify Scott Cooper As Special Master" (Doc. No. 191, "Motion"). Via the Motion, Plaintiffs seek to disqualify the court-appointed Special Master, Scott Cooper, due to his past relationship with one of Defendants' expert witnesses, Mr. Mark Hammerquist. In Mr. Cooper's non-disqualification statement, after stating that he was aware of no grounds for disqualification, he disclosed the following:

> As an additional comment for extra transparency, I finally received a preliminary set of documents from the parties this afternoon, Tues Aug 9, and learned for the first time that one of the experts' reports was authored by Erik Hammerquist at FTI. The forensic expert community is fairly small, and I regularly am in touch with other experts. The last time I spoke with Mr. Hammerquist was about 10 months ago (and he did not mention this case, or make any reference to it). Mr. Hammerquist also happens to have worked for me in the past (as have scores of other computer forensic experts), but the last time for Mr. Hammerquist was 14 years ago in October of 2008, (as did approximately 40 other experts) when I was (as referenced in my CV) a Senior Managing Director at FTI.
>
> My prior interactions with Mr. Hammerquist will not affect my impartiality, and I have no related personal bias or prejudice.

(Doc. No. 189 at 1-2).

1

In the Motion, Plaintiffs argue that this disclosure is significant because "Mr. Cooper was formerly a supervisor of Mr. Hammerquist when they worked at FTI and they maintain a professional acquaintance, if not a friendship, to this day." (Doc. No. 192 at 3). According to Plaintiffs, this relationship may result in Mr. Cooper "giv[ing] undo weight to the methodologies used by Hammerquist as opposed to Plaintiffs' experts." (*Id*). Plaintiffs further assert that their concerns are

> magnified considering . . . [that the] special master is not merely charged with making findings of fact as to an element of a claim. Here, he is charged with resolving whether Plaintiffs lied to this Court and fabricated evidence. Plaintiffs are defending against sanctions and possible contempt. The stakes are higher as should be the parties' and this Court's concern about the impartiality of the special master.

(*Id*. at 4).[1]

Defendants filed a response (Doc. No. 194, "Response") in opposition to the Motion. In the Response, Defendants assert that they "do not believe that Mr. Cooper meets the standard for disqualification" because "he worked with Defendants' expert regarding this matter Defendants' expert more than a decade ago, and has never communicated with Defendants' expert regarding this matter." (*Id*. at 1). Defendants point out that "[h]istorically professional contact that does not bear on the matter at bar does not disqualify a neutral judge." (*Id*. at 1 (citing *Johnson v. Mitchell*, 585 F.3d 923, 946 (6th Cir. 2009) ("[W]e have consistently held that a judge need not recuse himself on the basis of prior contact with a party or a witness, as long as the judge does not have a familial, financial, or similarly close relationship with the party or witness and as long as the

---

[1] The Court agrees with Plaintiffs that these considerations make it especially important that the consequential factfinding in this case be made (subject, of course, to the undersigned's prerogative and duty to accept or reject any other person's factfinding as he deems appropriate) by the right person. This has been the Court's impetus all along for appointing a special master rather than have the Court do its factfinding without the assistance of a special master. And, relatedly, the Court certainly does not begrudge Plaintiffs' strong desire to ensure having the right (or at least *an* appropriate) special master. But for reasons expressed herein, the particular concerns about Mr. Cooper that underlie the instant Motion have proven to be unfounded.

2

judge has not received out-of-court information about the case at hand.")))). Thus, Defendants maintain that Mr. Cooper should not be disqualified.

On August 19, 2022, the Court held a hearing via Zoom on the Motion. During the hearing, Mr. Cooper testified at length about his relationship with Mr. Hammerquist as well as his qualifications and methodologies of his investigation. The Court, counsel for Plaintiffs, and counsel for Defendants all posed questions to Mr. Cooper regarding the nature, extent, and potential significance (to Mr. Cooper's methodology and ultimate conclusions) of the relationship with Mr. Hammerquist.

At the conclusion of the hearing, the Court invited the parties to file, at their option, supplements to the Motion or the Response. Defendants declined the invitation, while Plaintiffs filed a supplement to their Motion (Doc. No. 196, "Supplement"), wherein Plaintiffs renew their objection to Mr. Cooper as special master and raise additional argument regarding Mr. Cooper's testimony at the hearing. Plaintiffs' view of Mr. Cooper's testimony is that he "revealed a strong professional and personal connection with Mr. Hammerquist" that leaves him "unable to avoid an unconscious bias regarding the expert testimony of Mr. Hammerquist. (*Id*. at 2).

**LEGAL STANDARD**

Fed. R. Civ. P. 53(a)(2) governs disqualification of special masters and states that a "master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval consent to the appointment after the master discloses any potential grounds for disqualification. Section 455 sets forth a number of specific circumstances under which a judge must disqualify himself, including where:

> He or his spouse ...:
> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

3

> (ii) Is acting as a lawyer in the proceeding;
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; [or]
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(b)(5). More generally, a judge must be disqualified "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is an objective standard that asks "whether another person with knowledge of all the circumstances might reasonably question the judge's impartiality." *Conway v. Vergos*, 297 B.R. 116, 121 (W.D. Tenn. 2003). Merely knowing other persons . . . [including potential witnesses], and being associated with them can take place in many ways, and that alone creates neither an impropriety nor an appearance of partiality. Indeed, aside from relegating judges to an existence akin to that of a monk, they are unavoidable." *Sexson v. Servaas*, 830 F. Supp. 475, 482 (S.D. Ind. 1993); *see also In re Cooke*, 160 B.R. 701, 706 (Bankr. D. Conn. 1993) ("[A] judge's mere acquaintance with a party or witness is not sufficient to call into question that judge's impartiality.") (citing cases).

The decision of "whether a reasonable person would infer, from all the circumstances, that the judge's impartiality is subject to question" is a matter of judicial discretion. *Baker v. City of Detroit*, 458 F. Supp. 374, 376 (E.D. Mich. 1978) (citation omitted); *see also Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 382 (6th Cir. 1997) ("We review a judge's decision regarding § 455 recusal for abuse of discretion."). It stands to reason that a district judge would have, if anything, even broader discretion in determining whether to disqualify a special master under § 455 than in determining whether to recuse herself or himself.

## ANALYSIS

After consideration of Plaintiffs' Motion and Supplement thereto, Defendants' Response, and the testimony of Mr. Cooper at the hearing on the Motion, the Court finds that Mr. Cooper's

impartiality may not be reasonably questioned, and therefore he does not meet the standard for disqualification. Although Mr. Cooper and Mr. Hammerquist had previously worked for the same company (and then for a short period of time for that company's successor company),[2] such co-working ended fourteen years ago and was not especially close even while it existed. Since that time, the two have kept in contact, but the relationship has been intermittent and merely a business relationship; moreover, Mr. Cooper was clear that Mr. Hammerquist had not shared with him any case-related information.[3] This is not the kind of relationship that suggests a need for disqualification. *See Johnson*, 585 F.3d at 946 ("[W]e have consistently held that a judge need not recuse himself on the basis of prior contact with a party or a witness, as long as the judge does not have a familial, financial, or similarly close relationship with the party or witness and as long as the judge has not received out-of-court information about the case at hand."); *Sexson*, 830 F. Supp. at 482.

It is perhaps more probative that even if Mr. Cooper did have some partiality towards Mr. Hammerquist, there is no reason to believe that it would be a *material* partiality. That is, every indication is that any alleged partiality towards Mr. Hammerquist would make no difference to Mr. Cooper's work as special master.

Mr. Cooper was adamant that such relationship would not influence his judgment in this matter, and the Court finds Mr. Cooper's testimony to be credible for multiple reasons. First, Mr. Cooper is vastly experienced in his field, and there is no reason to think that Mr. Cooper would be inclined to defer to anyone—including Mr. Hammerquist, whom Mr. Cooper pointedly stated (not

---

[2] These companies are, respectively, INSYNC Consulting Group, Inc. and FTI Consulting, Inc.

[3] The Court grants that Mr. Cooper's testimony reveals that aspects of this business relationship had a more social touch (involving, for examples, lunches together and a wedding gift from Mr. Cooper and certain other individuals to Mr. Hammerquist). But experience shows that many relationships that feature an occasional social touch nevertheless are appropriately viewed as business relationships.

5

Case 3:19-cv-00513 Document 197 Filed 08/25/22 Page 5 of 7 PageID #: 6249

without some one-upsmanship) was born only years after Mr. Cooper already had started working with computers—with respect to the methodology used or conclusion reached in connection with the Delegated Issues. To the contrary, everything about Mr. Cooper's testimony (in manner and substance) suggested that he is the kind of person would be entirely loath to consciously surrender—and would be unlikely to subconscious surrender for some unknown reason— any part of his professional judgment to Mr. Hammerquist. Second, Mr. Cooper's testimony was entirely clear that he would not rely on the expert reports (of Mr. Hammerquist or anyone else) in forming his opinion, but rather would be relying more or less exclusively on the metadata associated with the emails at issue. Thus, any bias Mr. Cooper supposedly possesses would not affect his protocols or conclusions in any event.[4] Third, the Court simply did not perceive that any of Mr. Cooper's testimony was successfully impeached.

The Court cannot help but note that the overlap of Mr. Hammerquist and Mr. Cooper's time at INSYNC Consulting Group, Inc. and FTI Consulting, Inc. in Los Angeles[5] (an overlap that ended 14 years ago) was clear from the record prior to the parties voluntarily choosing Mr. Cooper to act as Special Master in this case. (*See* Doc. No. 119-21 at 35, and Doc. No. 180-4 at 5). Yet,

---

[4] In Plaintiffs' Supplement, they argue that Mr. Cooper "intends to exceed the scope of his authority." (Doc. No. 196 at 7-9). They assert that the Court's Order Appointing Special Master (Doc. No. 188) (which was entered largely as it was proposed jointly by the parties), "when taken as a whole, does not grant Mr. Cooper the authority to conduct his own independent forensic review to the exclusion of the expert testimony in the record" because the Order states that "consideration of expert evidence shall be limited to review of the opinions, exhibits, and deposition testimony in the record." (Doc. No. 188 at ¶ 5). This argument exceeds the scope of, and is irrelevant to, the pending Motion, which requests only disqualification based on Mr. Cooper's alleged bias regarding Mr. Hammerquist. And in any event, Plaintiffs' argument simply misses the mark. The Court's Order Appointing Special Master limits what Mr. Cooper can do *when considering the expert evidence*, but it does not limit Mr. Cooper to only reviewing the experts' reports when reaching his conclusions regarding the Delegated Issues; it does not say that *when considering the Delegated Issues, he can consider only the expert evidence.* Indeed, the Order states that the Special Master "shall have all authority to take all appropriate measures to perform the assigned duties fairly and efficiently" and in so doing, the Special Master may "have access to trade secrets, proprietary information, and other confidential information" (*id.* at ¶ 14), in addition to all "filings, briefs, discovery materials, or other record documents requested by the Special Master" (*id.* at ¶ 9). The Court's order clearly allows the Special Master to review anything in the record or received from the parties when drawing his conclusions.

[5] Mr. Hammerquist's curriculum vitae (CV) specifically identifies Los Angeles (California) as his place of employment with these two companies, and "Los Angeles" appears all over Mr. Cooper's CV.

6

Plaintiffs did not complain about this overlap or assert its alleged significance until *after* Mr. Cooper had been appointed. If Plaintiffs had such an issue with this overlap, Plaintiffs should have brought up their issue on the front end, and the parties likely could have agreed to hash out any issues with Mr. Cooper (without the need ever to involve the Court in doing so), and/or recommend the appointment of one of the other special master options, thus obliviating the need for litigating this issue.

Nevertheless, Plaintiffs' request for disqualification is before the Court now. And in the Court's discretion and for the reasons stated above, Plaintiffs' request is DENIED. Mr. Cooper will proceed as Special Master in this matter.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE