IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VIMALA, LLC, et al., | ) |
|     Plaintiffs, | ) ) ) |
| v. | ) NO. 3:19-cv-00513 ) JUDGE RICHARDSON |
| WELLS FARGO BANK, N.A., et al., | ) ) |
|     Defendants. | ) |

# **ORDER**

Pending before the Court is Plaintiffs' Motion to Limit and for a Protective Order (Doc. No. 198, "Motion"), together with a memorandum in support of the Motion (Doc. No. 199) and additional attachments in support of the Motion (Doc. No. 200). Defendants have filed no response to the Motion. Via the Motion, Plaintiffs seek:

> 1) for an order limiting the Special Master from exceeding the scope of the "Delegated Issues" defined by the Court in its Order Appointing the Special Master (Doc. 188) ("Order"); 2) for an order protecting Plaintiffs from giving testimony to the Special Master until such time as the scope of the topics of the testimony sought are made clear and so that Plaintiffs may have adequate time to prepare for such questioning; and 3) for an order limiting the Special Master from conducting new and additional discovery on areas of inquiry not previously a part of the discovery record.

(Doc. No. 200 at 1).[1]

Whether a special master has exceeded the scope of the authority granted him via a federal court order is a question of the interpretation of that order and thus a question of (federal) law. *See EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 346 (6th Cir. 2008) (referring

---

[1] The Delegated Issues are as follows: (1) which (if any) of [particular] allegedly fabricated emails were fabricated and, if so, (2) which (if any) of such fabricated emails were fabricated by Plaintiff Venkataraman. (Doc. No. 177 at 3).

interchangeably to "special master" and "special administrator"). Such interpretation, however, naturally must be conducted with an eye towards the facts that underlie the context in which the interpretation is to be made.

Notably, the order appointing the Special Master (Doc. No. 188, "Appointment Order") indicates that the Special Master's authority, though plainly subject to certain restrictions, generally is quite broad. (Doc. No. 188 at 3) ("The Special Master shall have the authority to take all appropriate measures to perform the assigned duties fairly and efficiently subject to any limitations set forth herein."). With this in mind, the Court will address in turn each of Plaintiffs' three requests for relief.

I. <u>Plaintiff has not established that the Special Master has exceeded the scope of his authority under the Appointment Order.</u>

Plaintiff asserts as follows:

> [T]he Special Master has made repeated inquiries into topics that are not relevant to the Delegated Issues. For example, the Special Master has inquired into Plaintiff Vimala LLC's QuickBooks records, including questions regarding who created and maintained reports and other similar topics; the Special Master has even gone as far as to request unlimited access to QuickBooks and its audit trail. The Special Master has also made significant inquiries into subpoena responses made by wholesale vendors that had only very tangential relationships with Plaintiffs early in the life of Vimala. The Special Master has requested to have Brooke Ulrich, a sales representative of one such vendor, Commando, testify in person before him. Ms. Ulrich has not been deposed by either party. The scope of information that Ms. Ulrich will be able to testify to is exceedingly narrow. Ms. Ulrich certainly will not have information remotely relevant to the Delegated Issues.
>
> Additional topics that the Special Master has made inquiries regarding (and spent significant time and billed for) include but are not limited to:
>
> • Sales Data
> • Tax Returns
> • Plaintiff's Customer Information
> • Plaintiff's Non-IT and Non-Technical Experts
>
> These topics of inquiry are not relevant to the Delegated Issues.

> Additionally, while it is unclear what the Special Master plans to question Ms. Venkataraman (and, if different, the company representative of Vimala, LLC) about (See argument below), the Special Master has indicated that he may make broad and unspecified inquiries into areas regarding vendors, QuickBooks, and other such topics. The Special Master has stated that the Plaintiffs need to be prepared to "give testimony, for topics that have already been introduced in this matter."

(Doc. No. 199 at 5-6). Based on these assertions, Plaintiffs have two (alternative) requests of the Court:

> Plaintiffs respectfully request that this Court issue an order limiting the inquiries of the Special Master to matters relevant to the Delegated Issues. Specifically, Plaintiffs request that the Special Master be prohibited from making further inquiries or findings of fact based on Sales Data, tax returns, QuickBooks, or vendors, including Commando and Ms. Ulrich. Plaintiffs further request that the Special Master be prohibited from questioning Ms. Venkataraman or Vimala regarding these topics, and any other topics, that are similarly unrelated to the Delegated Issues.
>
> Additionally, or in the alternative, Plaintiffs respectfully request that the Court clarify to the Special Master and the parties what topics the Special Master may inquire into, and which topics are not reasonably a part of the Delegated Issues.

(*Id.* at 6).

Obviously, Plaintiffs are not entitled to this requested relief unless the Special Master has actually exceeded the scope of his authority as claimed by Plaintiffs. The Court does not doubt that Plaintiffs (or at least their counsel) sincerely believe that the Special Master has exceeded the scope of his authority inasmuch as (in Plaintiffs' view) he is requesting information, and inquiring about, matters that are unrelated to the Delegated Issues. And the Court likewise does not dispute that the connection between the Delegated Issues and above-referenced information requests and inquires is not necessarily superficially apparent.

The problem for Plaintiffs, however, is that the Court has absolutely no way to know that there is no such connection. The Court in no way can count out the possibility that there is a connection, and Plaintiff certainly has done nothing to exclude every (or indeed anything close to

every) possible connection. On the current record, the Court cannot say that a review of the requested information would not directly or indirectly provide clues (forensic or otherwise) as to (1) which (if any) of the allegedly fabricated emails were fabricated and, if so, (2) which (if any) of such fabricated emails were fabricated by Plaintiff Venkataraman. And the requested information, so far as the Court can say, may help the Special Master perform the very foundational task of verifying the authenticity of particular data relevant to a resolution of the Delegated Issues. From the Court's current perspective, as to how the requested information may relate to Delegated Issue, possibilities abound—and Plaintiff has done nothing to debunk any number of such possibilities.

Perhaps even more to the point with respect to requested testimony in particular, the Appointment Order provides in pertinent part, "The Special Master shall further have the authority to order any representative of either party to appear and give testimony at an evidentiary hearing (as opposed to a deposition) concerning any matter *he deems relevant* to the resolution of the De[leg]ated Issues." (Doc. No. 188 at 4) (emphasis added). If one thing is clear from the current record, it is that the Special Master unequivocally deems the testimony he is requesting to be relevant to the Delegated Issues. Ergo, he is acting within the scope of the Appointment Order.

A focus (with respect to requested testimony and, for that matter, other kinds of requested information) on what *the Special Master* deems relevant to the Delegated Issues is entirely appropriate. The whole idea behind appointing the Special Master is that the Special Master has expertise, beyond what the Court possesses or has to time to bring to bear, regarding the Delegated Issues. It would make no sense, and also be very inefficient, for the undersigned to spend time second-guessing on the front end the Special Master's views as to what information is relevant to

a resolution of the Delegated Issues—which is precisely what Plaintiffs are asking this Court to do. The Court declines to do so.

Finally, the Court does not see—and Plaintiffs do not explain—why the Special Master's requesting of this information, as appears authorized by the Appointing Order, amounts to the prohibited act of "order[ing] *additional discovery* from a[ ] party." (Doc. No. 188 at 4) (emphasis added). Admittedly, the line between (permissible) requesting of testimony and other information on the one hand, and (impermissible) "order[ing of] additional discovery" is not ideally clear.[2] But the Appointment Order does not make any sense unless "order[ing] additional discovery" has a meaning distinct from generally requesting additional information and testimony. To the Court, the distinction must be that "ordering discovery' is a particular kind of requesting (or demanding) of information and testimony. In other words, although lawyers and litigants sometimes use the term "discovery" loosely to refer broadly to various modes of exchanging information, "discovery" as used in the Appointment Order must mean something more narrow and precise for the Appointment Order to make any sense in this regard.

In the course of federal civil litigation, "discovery" has a particular technical meaning, one spelled out in the section of the Federal Rules of Civil Procedure captioned "Disclosures and Discovery." In particular, technically "discovery" (as distinguished from "disclosures") refers to (and only to) depositions, interrogatories, requests for production of documents, physical and mental examinations, and requests for admission. *See* Fed. R. Civ. P. 27-36. The Special Master has not ordered any of these techniques. He comes closest to requiring a deposition and making a request for production of documents pursuant to Rules 33 and 34 respectively. But he cannot

---

[2] As noted below, however, the Appointment Order does draw a clear line at least between taking additional discovery on the one hand, and merely taking measures to "clarify or ascertain the nature, extent, and credibility of what is already in the record, including the content of expert reports" on the other hand.

accurately be deemed to have done this, in violation of the prohibition against his ordering additional discovery, if one looks at the Appointment Order in its entirety. The Appointment Order specifically authorizes the Special Master take testimony and "request additional information or documents" from the parties, (Doc. No. 188 at 4), and so the Special Master cannot reasonably be construed as doing something prohibited (*i.e.*, ordering discovery) when he does exactly that.

Importantly, the Appointment is clear about one thing that does *not* constitute taking (or, for that matter, "ordering") additional discovery. Specifically, taking steps to "clarify or ascertain the nature, extent, and credibility of what is already in the record, including the content of expert reports" does not constitute the prohibited act of ordering additional discovery. (Doc. No. 188 at 3 n.2 ("Nothing herein, however, is intended to prevent the special master from making appropriate inquiries—as opposed to taking additional discovery—as he sees fit to clarify or ascertain the nature, extent, and credibility of what is already in the record, including the content of expert reports."). And the Court perceives that the Special Master is adamant that this is all that he is doing. The Court will not expend judicial resources determining whether to reject the Special Master's opinion as to the proper characterization of which side of the line his efforts fall on, especially since it is entirely conceivably to the undersigned that they are fairly construed as falling on the right side of the line.

For all of these reasons, the Court denies this request for relief.

2. <u>Plaintiffs' request for an order protecting Plaintiffs from giving testimony to the Special Master on November 17, 2022, until such time as the scope of the topics of the testimony sought are made clear, is now moot.</u>

In priming their second request for relief, Plaintiffs write, "The Special Master has indicated that he plans to take testimony from Plaintiffs on November 17, 2022. While Plaintiffs have no objection to testifying, Plaintiffs object that it is unknown what topics or subject matters

the Special Master will ask and have not had adequate time to prepare or appoint a representative to testify as to the particular topics." (Doc. No. 199 at 6). The Court understands that this testimony went forward as scheduled on November 17. Accordingly, given the particular way it was phrased, this request for relief is moot and is denied accordingly.

3. <u>Plaintiffs' request for an order limiting the Special Master from conducting new and additional discovery is moot, and Plaintiffs have not established that the Special Master has conducted, or threatens to conduct, "additional discovery."</u>

Finally, Plaintiffs request an order "limiting the Special Master from conducting new and additional discovery on areas of inquiry not previously a part of the discovery record." (Doc. No. 188 at 1). Noting that under the Appointing Order, 'the Special Master shall not have the authority to order additional discovery from any party, whether fact or expert," (Doc. No. 188 at 4), Plaintiffs ground this (third) request for relief on the assertion that "the Special Master's requests exceed the discovery record that was created and produced by all parties in this Case." (Doc. No. 199 at 8).

Preliminarily, the Court notes that the Appointment Order speaks for itself in prohibiting the Special Master from ordering additional discovery (whether fact or expert) from any party. The Court expects the Special Master to comply with this prohibition. Accordingly, Plaintiffs have no need of an additional order "limiting the Special Master from conducting new and additional discovery on areas of inquiry not previously a part of the discovery record," or indeed from conducting *any* additional discovery of *any* kind; the request for such an order is moot, and thus will be denied, because such an order is already encompassed within the Appointment Order.

What Plaintiffs really seem to want here is an order essentially declaring that some of what the Special Master has done in the past, and threatens to do in the future, amounts to a violation of the Appointment Order's existing prohibition against him ordering "additional discovery." This explains Plaintiffs' request here for a more specific order (or "sub-order), one would "limit the

Special Master from examining Ms. [Brooke] Ulrich or similarly-situated persons,"[3] (*id.*), as the Special Master has indicated he wishes to do. But the Court fails to see why the Appointment Order prohibits such examination (at least if such person acquiesces in such examination, so that the Special Master need not seek to compel the person to be examined).[4] As noted, generally the Special Master is authorized to take all appropriate measures to perform the assigned duties (meaning, in broadest strokes, opining on the Delegated Issues) fairly and efficiently. And in so doing, he may conduct limited meetings or hearings. (Doc. No. 188 at 3). The Court does not see, and Plaintiffs have not explained, why an examination of a third-party such as sales representatives of Plaintiffs' vendors would be beyond the scope of the Special Master's authority to conduct "limited . . . hearings." And, consistent with its discussion above, the Court cannot say that—and Plaintiffs have not attempted to explain why, other than in the most cursory way—the testimony of such persons would not be relevant to the Delegated Issues. To the contrary, the Court can speculate as to various reasons why it might be and, more to the point, is not inclined to speculate that somehow the Special Master has it wrong in believing—as he clearly does—that it indeed is relevant to the Delegated Issues.

And, as with the first request for relief, the Court does not see—and again, Plaintiffs do not explain—why taking testimony from such third-parties would amount to the prohibited act of "order[ing] additional discovery from a[ ] party." Plaintiffs likewise have done nothing in connection with this request for relief to show what they did not show in connection with the first

---

[3] Plaintiffs identify Ms. Ulrich as a sales representative of a vendor of Plaintiffs, (Doc. No. 199 at 5), and presumably the referenced "similarly-situated persons" are other sales representatives of vendors of Plaintiffs.

[4] The Court does not perceive any current need to address whether the Special Master can *compel* a third party to testify.

request for relief: that the Special Master has done something that constitutes ordering *additional discovery*.

> 4. <u>Plaintiffs have not established that the Special Master's actions impose an undue financial burden upon Plaintiffs</u>.

Finally, Plaintiffs reiterate their previously expressed concerns about the costs to them associated with the Special Master's work. This time they note (with implied disapproval) a particular total expense figure to date—over $167,000, but only one third of which is borne by Plaintiffs—and complain that billing for activities beyond the scope of the Special Master's authority create an undue financial burden on Plaintiffs. The Court realizes full well that the financial burden is not welcome; presumably, financial burdens associated with high-stakes litigation rarely are welcome. But that does not mean that the $167,000 is undue in the sense of being excessive, and Plaintiff has not established that it is excessive. And, as noted above, Plaintiff has not established that that the Special Master has done anything to exceed his authority under the Appointment Order.

At the risk of repeating what he has already said many times in this litigation, the undersigned feels constrained to make some additional, and fairly broad comments, about the origin and reality of the need for the Special Master's work. Plaintiffs are the ones who, through retained counsel, initiated this lawsuit seeking recovery in excess of *$250 million* based on allegations—which very predictably are hotly disputed by Defendants—of conduct allegedly attributable to the Defendants that (if in fact it occurred) was nothing less than shockingly bad. In so doing, perhaps Plaintiffs are in the right; the Court has not yet formed an opinion regarding that. But in any event, Plaintiffs necessarily invited a searching, expensive, and very high-stakes inquiry into the truth of their allegations. Part of that inquiry (development of a report and recommendation as to the Delegated Issues) has for now been placed in the hands of the Special Master—

appropriately so, the undersigned remains very firmly convinced. Given the substantial complexity and potential consequences of that inquiry, Plaintiffs should not be surprised that the Special Master's work may prove to be thorough and expensive. And the Court will not mince words here: Plaintiffs (and, to a lesser extent) their counsel presently stand accused of very serious misconduct. Due to, among other things, its respect for them and their rights, the Court wants (and feels obligated to) have the benefit of a very thorough and informed inquiry before drawing any conclusions as to the validity of those accusations. Plaintiffs and their counsel may not like the cost of this. But the Court can assure them that it beats the alternative, which is to have the Court make what could be for them potentially career or life-altering decisions without the benefit of adequate information to make such decisions.

With respect to expenses, the undersigned has been advised that Plaintiff Venkataraman is far from current on her payment of her (minority) share of the Special Master's invoices. The Court expects both parties to remain current on their payment of the Special Master, and that it hopes to avoid having to decide what to do should they fail to do so—which the Court may have to do sooner rather than later should any such failure continue.

The Court also notes that the major reason for appointing a special master in the first place was the desire for efficiency (in terms of the expenditure of district judge resources on a mere single portion of one particular case on the district judge's docket) and for the utilization of the Special Master's expertise in deciding how best to answer the Delegated Issues. And thus it is not the undersigned's intention that the parties rush to him to complain piecemeal about particular steps taken by the Special Master in an effort to nip those steps in the bud.[5] And it is likewise not

---

[5] This is not necessarily to suggest that this is what Plaintiffs have done via the Motion; this is, instead, to lay down a marker as to what the Court expects the parties to do (and not do) in the future. Having said that, the undersigned realizes that should such complaints be lodged, he will have to resolve them in some fashion.

the Court's intent that it should have to field complaints about Plaintiff's non-payment of the Special Master's fees. Moreover, having as he does approximately 500 other cases on his docket, the undersigned's ability to micromanage the work or the payment of the Special Master (even if he were inclined to do so) is quite limited.

Nothing herein is meant to suggest that the Motion does not raise colorable concerns. Especially given that the Court denied *Plaintiffs'* request (which was expressly opposed by Defendants) to authorize the Special Master to take additional discovery, it would be galling indeed for Plaintiffs if the Court were to permit additional discovery now that Plaintiffs do oppose it. And, as suggested above, the line demarcating "discovery" for purpose of the Appointment Order is not so clear so as to preclude reasonable debate about the issue. But ultimately, the Special Master must have some discretion in determining on the front end whether his acts are authorized by the Appointment Order (rather than the unauthorized ordering of additional discovery). And the Special Master has a colorable basis for believing that none of what he is doing falls into the latter rather than the former category; moreover, Plaintiffs' argument to the contrary is far too general to convince the Court to overturn the Special Master's opinion in this regard.

Nor is anything herein meant to suggest that the undersigned has formed any opinion about the merits of the case as a whole or any other motion currently pending in this case. In fact, he has not done so.

## CONCLUSION

For the reasons set forth above, the Motion (Doc. No. 198) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE