UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VIMALA LLC, d/b/a ALECIA et al.,     Plaintiffs
v.
WELLS FARGO BANK, N.A. et al.,     Defendants.

(Case No. 3:19-cv-00513)  Judge Eli Richardson

## DECLARATION OF SPECIAL MASTER SCOTT COOPER, CMC CECI

I, Scott Cooper, declare as follows:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to those facts.

### Background and Qualifications

2. I am a Principal at Pegasus Squire, Inc. ("Pegasus"), a global provider of independent forensic, technology, and litigation consulting services, with a specialization in Electronic Discovery and Computer Forensics.

3. I have been qualified as a computer expert, addressing the three areas of general systems, data recovery, and computer forensics, as both a declarant and expert witness, in both Federal and State courts, and have been designated as a Special Master, a Court-appointed Referee, and a Court's Expert. Over the last 35-plus years, I have performed expert computer services for over approximately 500 clients.

4. I have performed forensic services for, among others, the United States Department of Justice, the White House, Fortune 100 corporations, major law firms and major accounting firms throughout the United States. Pegasus' services have been used in conjunction with investigations, data recovery, data reconstruction, data authentication, and general litigation.

5. Prior to my current position at Pegasus over the last dozen+ years, I was a Senior Managing Director at FTI Consulting, Inc. (NYSE: FCN), and was the senior-most person globally in their Electronic Evidence Consulting practice. Prior to FTI, for over twenty years, I was a Managing Director and one of the founders of INSYNC Consulting Group, Inc., a nationally recognized independent technology consulting firm, with a specialization in Electronic Discovery and Computer Forensics. Prior to INSYNC, I was

employed as a senior consultant within KPMG Peat Marwick's Management Consulting and Technology Practice.

6. I am a current member (and former chapter President) of the High Technology Crime Investigation Association (HTCIA), the Institute of Management Consultants (IMC), the U.S. Department of Homeland Security's Los Angeles Electronic Crimes Task Force (LAECTF) / Cyber Forensic Task Force (CFTF), the FBI's InfraGard, the American Society for Industrial Security (ASIS), and the Forensic Expert Witness Association (FEWA). I am certified by the California State Bar as an authorized MCLE course provider. I lecture and teach on a regular basis, and have published numerous articles in journals, including the National Litigation Consultant's Review and California CPA publications.

7. I personally have over thirty-five years of training, education, and experience with computer systems and associated data. I hold national certifications as a Certified Management Consultant and also a Certified Expert in Cyber Investigations. My specialized focus includes the forensic acquisition, analysis, and recovery of electronic data contained within and related to computer systems and incorporated electronic data and media. Details of my background, experience, and qualifications are in my Curriculum Vitae, attached hereto as **Exhibit 1**.

## Appointment and Assignment

8. I was appointed on 8/3/2022 as Special Master, by U.S. District Judge Eli J. Richardson, for the above captioned matter (via Document 188, "Order Appointing Special Master", the "Appointment Order"), to determine two issues: "**first**, which (if any) of the allegedly fabricated emails raised in Wells Fargo's Motion for Sanctions (Doc. Nos. 125, 126) were fabricated; and, if so, **second**, which (if any) of such fabricated emails were fabricated by Plaintiff Venkataraman (hereinafter the "Delegated Issues")".

9. Paragraph 16 of the Appointment Order directs the Special Master to generate monthly invoices to the parties. (This occurred, and the 4 monthly invoices for months ending Aug 31, Sep 30, Oct 31, and Nov 30 are attached as **Exhibit 2**.)

10. Paragraph 17 of the Appointment Order orders Plaintiffs to be responsible for paying 1/3 of these invoices (and Defendants to be responsible for 2/3), and to pay "to the Special Master their above-specified respective portion of each monthly invoice within thirty (30) days of receipt of such invoice. (Although Defendants were 100% in compliance, Plaintiffs never complied at all.) Plaintiffs' portion of those invoices,

excluding the (also unpaid) retainer amounts, and the still-unbilled work during the month of December, total $51,791.83.

**Plaintiffs Encouraged Ongoing Special Master Work**

11. Prior to, and when the Appointment Order was issued, Plaintiffs never expressed to the Special Master an inability to pay for their portion. After Plaintiffs received the first monthly invoice, they still did not express an inability to pay for their portion. (But did repeatedly express their support for the Special Master to continue his work.) After Plaintiffs received the second monthly invoice, they did not express an inability to pay for their portion. (But did repeatedly express their support for the Special Master to continue his work.) It was not until after Plaintiffs were notified of their failure to pay either of the first two invoices, did Plaintiffs first reference an inability to pay to the Special Master (and waited for 3 weeks after receiving the second invoice to do so), and yet couched the "inability" with qualifications and optimistic language ("*She lacks the finances to pay these invoices, but she is reaching out to potential sources of financial assistance.*") [Note the qualification of "these invoices", as opposed to having funds to pay for other invoices or services. Also note the optimism of "reaching out", as opposed to having no hope of having any available funds..] Then, less than 1 week later, Mr. Barham emailed "*I can report that Ms. Venkataraman has sought to borrow funds to pay your invoices, and we understand that funds are forthcoming*." (And, Plaintiffs continued to repeatedly express their support for the Special Master to continue his work.)

**Plaintiffs' Counsel Daniel Barham is Involved and Responsible for Financial Obligations**

12. Then, it was not until after Plaintiff Ms. Venkataraman testified at the 11/17/2022 hearing that she wasn't aware of any such "forthcoming" funds and she hadn't "*been given that confirmation from any of our sources*" that Mr. Barham spoke up and provided testimony why HE used that word "forthcoming" in HIS email to the Special Master. But, he went on to say that as far as HE knew "*it's still sort of up in the air as to whether those funds are going to be released or not*" [Note Mr. Barham's involvement in funding, exclusive of Plaintiff Venkataraman, especially given Venkataraman's preceding testimony of lack of awareness of any such forthcoming funds.]

13. After the 11/17/2022 hearing, Plaintiffs did again repeatedly express their support for the Special Master to continue his work, including Plaintiff Venkataraman's multiple pleas at the end of the hearing with:

    a) *"It's also important for me that you be willing to really take a deep dive into the data with the metadata."*,

    b) *"I would just ask you to please look at the data, take a second look at it"*, and

    c) *"And I would just ask you to please take a look at the data again."*

14. Evidence provided by Plaintiffs to Defendants (that the Special Master has a copy of) includes copies of invoices from Plaintiffs' Counsel to Plaintiff Venkataraman. Those invoices are for four different matters, with all showing "Due Upon Receipt", with totals approximating $15,000, but only the Vimala Wells Fargo Litigation matter is billed at a $0 rate (indicating a contingency relationship, with Plaintiffs' Counsel also handling costs and expenses).

15. Evidence provided by Plaintiffs to Defendants (that the Special Master has a copy of) also include references to both:

    a) Settlement agreements with other parties and Venkataraman, with payments moving in one direction or the other; and

    b) Investors that may have ongoing investment commitments for Plaintiffs operations

16. It thus appears that Barham's representations that paying the Special Master's invoices as being effectively impossible are not credible.

## Supplemental Arguments by Plaintiffs

17. If Plaintiffs continue to make pleas of poverty, at the Court's request, I am able to provide to the Court case documents, related computer metadata, and forensic data artifacts that will refute that argument. Additionally, that argument rings hollow because Plaintiffs and their Counsel (and their expert, Mr. Lanterman) are the ones responsible for the Special Master being needed. Plaintiffs and their Counsel are not innocent victims here. They caused the very issue that needed (and they supported) the needed work by the Special Master. Mr. Lanterman is also involved in creating this need. His expert report only contains one opinion - - *"that the Produced Emails were routed through Defendant Wells Fargo's systems"*, and then one conclusion *"Consequently, there is no evidence to support the conclusion that the emails are spoofed"*.

These two statements do not address the two Delegated Issues of fabrication or authorship, (only the unrelated topic of email spoofing), yet both he and Plaintiffs' Counsel include and conflate the topic of "fabrication" as being included in Lanterman's report - - thus creating the apparent need for the Court to involve a Special Master.

18. As the Court noted in its 12/20/2022 Document 203 Order, "Regarding Plaintiffs in particular, the Court notes that they were the ones who invoked this Court's jurisdiction seeking adjudication of their claims (whereby they sought more than a quarter-billion dollars in damages), and the Court made clear that, in order for the Court to adjudicate this case as requested by Plaintiffs, the Special Master's work would need to be completed and paid for. Thus, although Plaintiffs objected to the appointment of the Special Master, this objection was in tension with the reality that (for reasons the Court trusts it need not reiterate here) the appointment (and payment) of the Special Master was necessary for Plaintiffs to achieve their stated goal having their claims adjudicated by this Court."

19. If Plaintiffs continue to make pleas of innocence and lack of involvement with fabricating the emails in question, at the Court's request, I am able to provide to the Court case documents, related computer metadata, and forensic data artifacts that will refute that argument. Part of that file is my report, that has been evolving during the scope of my work. My report is not fully complete, but as various pieces of my work were completed, the related conclusions were included in the report. Recently, Plaintiffs have promised to make Mr. Lanterman available for a hearing, and also promised to provide two pieces of (previously unreliably searched) media in Venkataraman's custody available for my examination. Those three events would have provided the likely final pieces of evidence I needed to fully complete my report. And, those three events were the opportunities for Plaintiffs to provide any evidence that would contradict the conclusions reached to date in the report - - namely that 1) the emails in question were fabricated, and 2) that Venkataraman was effectively responsible for (by either being the author that performed, or being complicit in performing) the fabrications. However, Plaintiffs never followed through with their promises to make those 3 events available for my examination, so I am able to complete my report with the evidence that has been made available to me to date. And, again, at the Court's request, I can provide a draft version of the report, or I can complete the report and then provide it.

20. If Plaintiffs continue to make pleas of being victims, at the Court's request, I am able to provide to the Court case documents, related computer metadata, and forensic data artifacts that will refute

that argument. In addition to the report described above and the fraudulent activities that it details, the forensic evidence that I have examined also shows fraud by Venkataraman in soliciting a business loan from Pathways Lending, and that Venkataraman is not the victim, but the culprit. Then, related to the above, if the Court believes that this matter might continue, or that the related wrongdoings might be referred to law enforcement for prosecution, I would suggest that the Court consider either a seizure order, or at least a preservation order, for all potentially related media, data, and other such electronically stored information ("ESI") that is in the custody and control of both the Plaintiffs and also their Counsel.

21. If Plaintiffs continue to make pleas (or implications) of Plaintiffs' Counsel not being financially responsible for this matter, at the Court's request, I am able to provide to the Court case documents, related computer metadata, and forensic data artifacts that will refute that argument. In addition to the evidence described above, there is also evidence of spoliation by Plaintiffs and Plaintiffs' Counsel - - by both omission and commission, and also by effectively misleading statements.

22. Lastly, after receiving a copy of the Court's 12/20/2022 Document 203 Order, I emailed Mr. Barham the following morning (on 12/21) reminding him of the obligation to pay for the Special Master's invoices, and asking for a response within 24 hours. Then, the following afternoon, yesterday (on 12/22), he emailed (attached as **Exhibit 3**) that his client, Ms. Venkataraman, had told him in a phone call earlier that day, that Plaintiffs were "*terminating Barham & Maucere as counsel*" (presumably, for this matter, and not for the other at least 3 matters). It is my opinion that this last act is a continuation of the fraud and other such wrongdoings by both the Plaintiffs and their Counsel, and should not be rewarded by relieving either of them of their obligations for this matter.

23. As additional information becomes available to me, I may provide further updates to this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of December, 2022, at Los Angeles, California.

_____
Scott Cooper, CMC CECI